# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

JAMES R. BERTIN and TRICIA  )
M. BERTIN,                    )
                              )
                 Plaintiffs,  )
                              )
        v.                    )        No.  06-3002
                              )
GRANT AUTOMOTIVE, INC.,       )
                              )
                 Defendant.   )

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on cross-motions for summary judgment.  See Defendant's Motion for Summary Judgment (d/e 14) (Defendant's Motion); Plaintiffs' Motion for Summary Judgment (d/e 20) (Plaintiffs' Motion).  Plaintiffs James R. Bertin and Tricia M. Bertin (the Bertins) bring this action against Defendant Grant Automotive, Inc. (Grant Automotive), alleging various statutory and common law causes of action. The Bertins allege in Count I that Grant Automotive violated the Equal Credit Opportunity Act (ECOA),15 U.S.C. § 1691 et seq., by failing to provide them with written notice of the denial of credit and reasons for the

1

credit decision.   The Bertins allege in Count II that Grant Automotive violated the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/2C, by completely failing to return their $400.00 down payment and by failing promptly to return their trade-in vehicle.   In Count III, the Bertins allege that Grant Automotive violated the Illinois Uniform Commercial Code (IUCC), 810 ILCS 5/9-611, by failing to provide them with notice concerning the disposition of their collateral.  The Bertins allege in Count IV that Grant Automotive violated the common law tort of trespass to chattels or conversion by unlawfully repossessing and subsequently selling their Cavalier to a third party.   For the reasons stated infra, the Plaintiffs' Motion for Summary Judgment is DENIED.   The Defendant's Motion for Summary Judgment is ALLOWED.

## STATEMENT OF FACTS

At all times relevant to this action, the Bertins resided in Pana, Christian County, Illinois.[1]   Grant Automotive, an Illinois domestic corporation, is a car dealership in Taylorville, Christian County, Illinois.  On January 2, 2004, Tricia stopped by Grant Automotive's facility located in

---

[1]When referring to the individual Plaintiffs, the Court will refer to them by their first names in order to distinguish them.

Taylorville, Illinois to see if an opportunity existed to purchase a car.  At that time, Tricia met with Grant Automotive's salesman Michael Cherry and completed a credit application in which Tricia indicated that she was employed as a waitress at Linda's Restaurant in Pana, Illinois, with wages of $400.00.  See Attachments to Defendant's Motion, Application for Credit.  Tricia claims that the information provided in her credit application was true and correct at that time.  Cherry advised Tricia that he would attempt to secure approval for financing on her and her husband's behalf, and would contact her with the status of the loan application.

In an effort to procure financing approval for the Bertins, Jason Johnson, Grant Automotive's employee, submitted their credit application to Centrix Financial, LCC (Centrix) and to Nuvell Financial Services (Nuvell).  Centrix declined to extend financing to the Bertins, but Nuvell conditionally approved provided that they: (1) sign the necessary loan documents; (2) submit proof of their home address; (3) provide proof of James' monthly  income of $1,600.00, excluding wage attachments and garnishments; (4) submit proof of Tricia's monthly income of $400.00, excluding wage attachments and garnishments; and (5) turn over title to a trade-in vehicle.  See Attachments to Defendant's Motion, Notice from

Centrix & Notice from Nuvell.  Nuvell's notice regarding the conditional approval of the Bertins' loan application specifically stated: "INCOME MUST PROVE AS STATED[.]" Id.

On the evening of January 2, 2004, Cherry contacted Tricia by phone and related that he was successful in securing financing for the Bertins, but that they had to satisfy Nuvell's financing conditions set forth above.  Cherry advised the Bertins to stop by the dealership the next day to pick a car qualified under Nuvell's financing terms, and to bring with them the following additional documentation to satisfy Nuvell's financing conditions: (1) proof of monthly income for both Tricia and James, (2) three prior years' employment history for James, (3) a phone bill, and (4) title to a trade-in vehicle.  Tricia testified in her deposition that Grant Automotive, through its employee, explained to her that the above financing requirements had to be met to secure financing approval from Nuvell. Plaintiffs' Exhibits for Summary Judgment Motions (d/e 21) (Plaintiffs' Exhibits), Deposition of Tricia Bertin (Tricia Dep.), at 14.

The following day, on January 3, 2004, the Bertins returned to Grant Automotive and furnished the requested paperwork.  Based on the representation of Grant Automotive's employees, the Bertins understood

that once they submitted the necessary documentation, they had met all of Nuvell's financing conditions, with no remaining contingencies left to be satisfied.  Cherry informed the Bertins that they had been approved for monthly payments of $325.00.  <u>Tricia Dep.</u>, at 11.  Grant Automotive represented to the Bertins that the only car that qualified under the Bertins' approved payment plan was a new 2004 Chevrolet Cavalier.  The Bertins decided to purchase the Cavalier.

To complete the purchase,  the Bertins met with Roger Estes, Grant Autmotive's finance manager, and signed various documents.  The parties executed a Retail Installment Contract (RIC) in which the Bertins agreed to make monthly payments of $355.25 for 59 months, even though under the financing approval, the Bertins had been only approved for monthly payments of $325.00.  <u>Attachment to Defendant's Motion</u>, <u>Retail Installment Contract</u>; <u>Complaint (d/e 1)</u>, Exh. A, <u>Retail Installment Contract</u>.  According to Estes, the change in the amount of monthly payment could have been due to a process called "rehash."  <u>Plaintiffs' Exhibits</u>, <u>Deposition of Roger Estes (Estes Dep.)</u>, at 96.  "This is a process where the [Grant Automotive] employee negotiates the terms of financing with a finance company."  <u>Payne v. Ken Diepholz Ford Lincoln Mercury</u>,

2004 WL 40631, at *1 (N.D.Ill. 2004). The RIC identified the Bertins as the buyers, Grant Automotive as the seller, and Nuvell Credit Corporporation as the assignee. The RIC set forth, among other things, an annual percentage rate (APR) of 9.9% and a finance charge of $4,659.51. The Bertins signed the RIC, but Grant Automotive did not. Grant Automotive delivered the Cavalier to the Bertins.

The parties also signed a document entitled "Bill of Sale", which included provisions such as, "This order is not a binding contract[,]" and "Dealer shall not be obligated to sell until approval of the terms hereof is given by a bank or finance company willing to purchase a retail installment contract between the parties hereto based on such terms." <u>Attachment to Defendant's Motion</u>, <u>Bill of Sale</u>. The Bill of Sale was signed by the Bertins and Estes. The Bertins also signed a Bail and Hold Harmless Agreement, which read as follows:

> Delivery of vehicle described on attached retail buyers is accepted by purchaser subject to credit approval by a financing institution within 72 hours, and in the event of a credit report, terms or amount unacceptable to the financing institution, the purchaser shall return the said motor vehicle immediately to the dealer, or pay the full purchase price in cash. The purchaser agrees that in the event of his or her failure or refusal to return the aforesaid vehicle to the dealer, or pay the full purchase price in cash, the dealer shall have the right, without notice or

demand and without legal  process, to enter upon any premises where the said vehicle may be loaded and take possession thereof.

Attachment to Defendant's Motion, Bail and Hold Harmless Agreement.

The Bertins lastly signed a document entitled "I Understand Form."

Estes also signed the document.  The "I Understand Form" provided:

I UNDERSTAND . . . This transaction is subject to final approval by lender.  All information I have stated on the application is correct.   This includes residence, work history and income.

I UNDERSTAND . . . I must have full coverage insurance (with deductibles no more than $500) to drive this vehicle off the premises.  I also understand I must contact my insurance company within 24 hours to transfer my insurance to my new vehicle if I have not yet done so.  I also understand I must contact my finance company to notify them if I change insurance companies.

I UNDERSTAND . . . my payoff of $ <u>730.00</u> must be subtracted from my trade-in allowance.

I UNDERSTAND . . . If there is any balance on my trade-in after a payoff has been made by the dealer due to insufficient funds or late charges or stopped payment on checks recently paid; I am responsible for immediate payment in full to the dealer within 24 hours of notification.

I UNDERSTAND . . . That I must keep my same employment and residence for the next 30 days in order to complete the financing agreement.

> I UNDERSTAND . . . If the dealer is not able to obtain financing on the vehicle I have purchased due to incorrect information, which I have given the dealer, then I will pay any additional fees or expenses in which the dealer has incurred to secured [sic] financing for my purchase.

> I UNDERSTAND . . . That in the event the funding on my vehicle with all lending institutions used for financing, can not be completed as agreed to by all parties involved; I am waiving my right to a portion or all of my down payment used in the purchase of this vehicle, which is contingent upon usage, mileage, and condition of the vehicle when returned.  This is based on $30 per day and 15 cents per mile.

Plaintiffs' Exhibits, I Understand Form.  Grant Automotive did not give a copy of the I Understand Form to the Bertins.  Tricia testified that she and James did not read the various documents they signed in connection with the purchase of the Cavalier.[2]  Tricia Dep., at 18-20.  The Bertins tendered two checks, each in the amount of $200.00, as a down payment, and purchased temporary insurance at a total cost of $145.00.[3]   Grant

---

[2]The fact that the Bertins did not bother to read the various documents that they signed in connection with the deal does not diminish their obligation to learn and understand the terms of the written contract.  Indeed, "[o]ne is under a duty to learn, or know, the contents of a written contract before he signs it, and is under a duty to determine the obligations which he undertakes by the execution of a written agreement."  Bates v. William Chevrolet/Geo, Inc., 337 Ill. App. 3d 151, 158, 785 N.E.2d 53, 59 (Ill. App. 1st Dist. 2003) (internal quotations omitted).

[3]The Court notes that James testified in his deposition that he recalled tendering one check for $200.00 as a down payment, but did not remember writing a second check

Automotive, in turn, accepted the Bertins' 1989 Cutlass as a trade-in vehicle.  After test driving the car, the Bertins approved the purchase and left the dealership with the Cavalier.

The Bertins claim that the transaction was fully consummated on January 3, 2004, and that they rightfully took possession of the new vehicle. Grant Automotive disputes this, asserting that the Bertins' loan application, as well as the additional documentation submitted in connection with the loan application, was subject to final approval by Nuvell.

On January 8, 2004, Cherry contacted Tricia by phone, claiming that Nuvell had declined to extend financing for the Cavalier because Tricia had been terminated from her employment and so could not provide proof of her monthly income, as required under Nuvell's financing terms.  Cherry therefore requested the return of the Cavalier.  The Bertins denied that the transaction was terminated and expressed that they wanted to proceed with the sales transaction.  Tricia states that she was not aware that she had been fired until she was told so by Cherry that day.  Tricia Dep., at 17.  Tricia was later able to verify that she had, in fact, been fired.  James Dep., at 14.

---

for the same amount.  Plaintiffs' Exhibits, Deposition of James Bertin (James Dep.), at 33-34.

Tricia testified that Cherry represented to her at that time that he could probably get the credit application to go through if she found a job that paid at least $10.00 an hour.  Tricia Dep., at 37-40.  Tricia attempted to do so, but was unsuccessful.  Neither Grant Automotive nor Nuvell provided the Bertins with any written notice regarding the denial of their loan application.[4]

On January 12, 2004, Tricia returned to Grant Automotive with the Cavalier and expressed that she wished to proceed with the deal.  She also informed Cherry that she was unable to find a job.  Cherry then demanded the return of the Cavalier and attempted to return the trade-in vehicle, but Tricia refused to take possession of the trade-in.  Tricia Dep., at 39.  Instead, she drove off in the Cavalier, without Grant Automotive's authority.

On January 15, 2004, Grant Automotive took possession of the Cavalier.  However, the Bertins, with the assistance of the Taylorville Police Department (TPD), were able to regain possession of it.  On January 19, 2004, Grant Automotive eventually took possession of the Cavalier.  About

---

[4]The record contains no document from Nuvell showing that it had in fact rejected the Bertins' loan application.

one or two days later, with the help of the TPD, the Bertins gained possession of their trade-in vehicle.   According to the Bertins, Grant Automotive demanded a fee of $200.00 in exchange for the trade-in vehicle, but the Bertins refused to pay it.  Grant Automotive denies this.

To date, Grant Automotive has failed to return the Bertins' $400.00 down payment.   Grant Automotive claims that, because the sales transaction was never consummated, it never cashed the checks tendered by the Bertins.  Plaintiffs' Exhibits, Defendant's Answer to Plaintiffs' First Set of Interrogatories, No. 4.  Moreover, it claims that the two checks have since been marked "void."  On February 19, 2004, Grant sold the 2004 Cavalier to a third party.  Grant never informed the Bertins regarding the disposition of the Cavalier.  Plaintiffs' Exhibits, Defendant's Answer to Plaintiffs' First Set of Interrogatories, No. 7.; Estes Dep., at 93.

## ANALYSIS

The Bertins claim that Grant Automotive violated: (1) § 1691(d)(2) of the ECOA by failing to provide them with written notice and explanation of the adverse credit action taken against them, (2) § 2C of the ICFA by failing to promptly return their trade-in vehicle and by failing to completely return their $400.00 down payment once they were denied credit, (3) § 9-

11

611 of the IUCC by selling the Cavalier to a third party without notifying them, and (4) the common law of trespass to chattels by unlawfully taking possession of the Cavalier.   The parties have filed cross-motions for summary judgment.  They move for summary judgment on all four counts of the Complaint.

At summary judgment, the moving party must present evidence that demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to the non-moving party. Any doubt as to the existence of a genuine issue for trial must be resolved against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Once the moving party has met its burden, the non-moving party must present evidence to show that issues of fact remain with respect to an issue essential to its case, and on which it will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

A.   Count I:  Equal Credit Opportunity Act

"The ECOA was originally enacted in 1974 to prohibit discrimination in credit transactions.  It was amended in 1976 to require

creditors to furnish written notice of the specific reasons why an adverse action was taken against a consumer." <u>Treadway v. Gateway Chevrolet Oldsmobile Inc.</u>, 362 F.3d 971, 975 (7th Cir. 2004) (internal citation omitted).[5] To be liable under the notice provision of the ECOA, Grant Automotive must have been a "creditor" that participated in the decision to extend credit to the Bertins within the meaning of the ECOA, rather than a "creditor" that merely referred the Bertins' loan application to lenders for consideration, and must have also taken an "adverse action" against the Bertins. <u>Id.</u> If Grant Automotive qualifies as a "creditor" that was either directly or indirectly involved in the decision to decline credit to the Bertins,

---

[5] The ECOA reads in relevant part:
(2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by--

   (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or
   (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

(3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

15 U.S.C. §§ 1691(d)(2) & (3); <u>see</u> <u>Treadway</u>, 362 F.3d at 975 n. 2.

Grant Automotive's obligation under the ECOA's notice provision is satisfied if either Nuvell or Grant Automotive provided written notice to the Bertins regarding the credit decision.  This is because, according to the ECOA, "[w]here a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this subsection may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed."  15 U.S.C. § 1691(d)(4); Brand v. Rohr-Ville Motors, Inc., 2003 WL 21078022, at *2 (N.D.Ill. 2003).

Here, it is undisputed that neither Nuvell nor Grant Automotive provided the Bertins with any written notice regarding the denial of credit. The issue therefore is whether Grant Automotive was a "creditor" that participated in the decision, either direct or indirectly, to reject the Bertins' credit application.

The ECOA defines the term "creditor" as, "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or

14

continue credit." 15 U.S.C. § 1691a(e). Grant Automotive admitted in its Answer to the Complaint that it is a creditor within the meaning of § 1691a(e) of the ECOA; it did not qualify its admission in any way. <u>See Answer to Plaintiff's [sic] Complaint (d/e 5)</u>, ¶ 19. Without even seeking leave to amend its Answer, Grant Automotive now asserts, in its Motion for Summary Judgment and in its Response to Plaintiffs' Motion for Summary Judgment, that its role as a creditor was limited because it merely referred the Bertins' loan application to two financial institutions for consideration. Grant Automotive, therefore, asserts that it is not liable under the ECOA's notice requirements.[6]

At this late stage, the Court will not allow Grant Automotive to amend its Answer because it would significantly prejudice the Bertins. The Bertins assert that they relied on Grant Automotive's admission and accordingly did not conduct discovery on the issue. <u>Plaintiffs' Response to Defendant's Motion for Summary Judgment (d/e 19)</u>, at 5. It appears that Grant Automotive is attempting to pursue new arguments against the

---

[6]The Seventh Circuit has held that an automobile dealership that "regularly refers applicants to lenders is a 'creditor' under the ECOA only for purposes of 12 C.F.R. § 202.4(a) (discrimination) and (b) (discouragement)" and so is not subject to the ECOA's notice requirements. <u>Treadway</u>, 362 F.3d at 979.

Bertins by changing its Answer to the allegation set forth in ¶ 19 of the Complaint. <u>See</u> <u>Crest Hill Land Development, LLC v. City of Joliet</u>, 396 F.3d 801, 804 (7th Cir. 2005). The Court therefore disregards Grant Automotive's assertion that it is not liable for failing to provide written notice to the Bertins regarding the denial of credit because it merely referred the Bertins to lenders. The Court accordingly finds that Grant Automotive, based on its admission in the Answer, is a creditor, as defined in § 1691a(e) and, thus, is subject to the ECOA's notice provision.

The Court must now determine whether Grant Automotive took an adverse action against the Bertins. The ECOA defines the term "adverse action" in relevant part as, "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). The evidence shows that, on January 2, 2004, Grant Automotive, through its employees, represented to Tricia that it would attempt to procure financing on the Bertins' behalf. The evidence shows that Cherry contacted Tricia on January 8, 2004, and informed her that Nuvell had declined to extend financing for the Cavalier because Tricia had failed to provide proof of her monthly income (since she had been fired

16

from her job).

The record discloses, further, that Cherry told Tricia that he could probably get the loan application approved if she found a job that paid at least $10.00 per hour. Tricia attempted to do so, but to no avail. The record discloses that, when Tricia told Cherry that she was unable to find a job, Cherry demanded the return of the Cavalier and attempted to return the trade-in vehicle to Tricia, which she refused to take.

The Bertins, however, cannot prevail on their ECOA claim because they have failed to show that they sustained any damages as a result of the violation. The ECOA authorizes an award of actual damages. 15 U.S.C. §1691e(a). Actual damages recoverable under the ECOA "may include out-of-pocket monetary losses, injury to credit reputation, and mental anguish, humiliation or embarrassment." Anderson v. United Finance Co., 666 F.2d 1274, 1277 (9th Cir. 1982) (citing cases); Fischl v. General Motors Acceptance Corp., 708 F.2d 143, 148 (5th Cir. 1983). Further, the Anderson Court noted that actual damages must be specifically proven. Anderson, 666 F.2d at 1277-78. The Bertins seek actual monetary damages in the amount totaling $545.00, which consists of an insurance payment of $145.00 and a down payment of $400.00. They also assert that they have

suffered embarrassment and humiliation.

Grant Automotive asserts that the Bertins' two checks totaling $400.00 have not been yet cashed and have been marked "void." The Bertins assert that their bank account has not yet been debited. As such, the Bertins have failed to show that they have suffered actual damages with respect to their down payment.

As to the Bertins' claim for actual monetary damages for the $145.00 insurance payment, the Bertins have failed to show that the insurance expense flowed from Grant Automotive's violation of the ECOA's notice provision. There is no evidence that the expense incurred for insurance was in any way connected to Grant Automotive's failure to provide written notice to the Bertins regarding the adverse credit decision. There is no evidence that the Bertins paid the $145.00 after Tricia lost her job (which loss of income triggered the denial of the loan). The insurance payment preceded any point at which Grant Automotive had any duty to provide written notice of the denial of credit. The Bertins are therefore not entitled to any actual monetary damages.

Finally, as to the Bertins' assertion that they suffered embarrassment and humiliation, the Court finds that the Bertins have failed to present

evidence showing that any mental anguish they allegedly suffered flowed from Grant Automotive's failure to provide written notice regarding the denial of credit.  The Bertins assert that the undisputed testimony reveals that they suffered embarrassment, but they fail to cite to any portion of the record supporting their assertion.  Moreover, the evidence in the record supports an inference that any embarrassment or humiliation that they might have suffered was due to the denial of credit and Grant Automotive's subsequent repossession of the Cavalier, and not due to Grant Automotive's failure to comply with the ECOA's notice provision.

The Bertins also seek an award of punitive damages under the ECOA.  See 15 U.S.C. § 1691e(b).  Even in the absence of proof of actual damages, this Court may award punitive damages "if the creditor's conduct is adjudged wanton, malicious or oppressive, or if it is deemed to have acted in reckless disregard of the applicable law."  Fischl, 708 F.2d at 148 (citing cases).  The Bertins have failed to present evidence showing that Grant Automotive's conduct in failing to furnish the Bertins with written notice regarding the denial of credit was wanton or malicious, or in reckless disregard of the ECOA's notice provision.  Based on these reasons, Grant Automotive is entitled to summary judgment on the ECOA claim (Count I).

B.      Count II: Consumer Fraud and Deceptive Business Practices Act

The Bertins argue that, after their loan application was rejected, Grant Automotive completely failed to return their $400.00 down payment and failed to promptly return their trade-in vehicle, in violation of § 2C of the ICFA.  Thele v. Sunrise Chevrolet, Inc., 2004 WL 1194751, at *3 (N.D. Ill. 2004).  Section 2C states in relevant part:

> If the furnishing of merchandise, whether under purchase order or a contract of sale, is conditioned on the consumer's providing credit references or having a credit rating acceptable to the seller and the seller rejects the credit application of that consumer, the seller must return to the consumer any down payment, whether such down payment is in the form of money, goods, chattels or otherwise, made under that purchase order or contract and may not retain any part thereof.

815 ILCS 505/2C.  Grant Automotive contends that the above statute is not applicable here because it did not "reject" the Bertins' credit application within the meaning of § 2C.   Even if the Court found that Grant Automotive "rejected" the Bertins' credit application, the Bertins' claim would still fail.

To prevail under the ICFA, the Bertins must present evidence that they have suffered actual damages.  Najieb v. Chrysler-Plymouth, 2002 WL

31906466, at *10 (N.D. Ill. 2002).  The Bertins have failed to do so.  The undisputed evidence shows that Grant Automotive has not yet returned the checks for $400.00 to the Bertins.  Grant Automotive, however, asserts that it has not cashed the two checks, totaling $400.00, tendered by the Bertins and that the two checks have since been marked "void."  The Bertins admit in their reply brief in support of their summary judgment motion that their "bank account has not been debited with the amounts of the two checks . . . ."  Reply In Support of Plaintiffs' Motion for Summary Judgment (d/e 26), at 11.  As such, the Bertins have failed to show that they suffered any actual damages.

The Bertins similarly cannot prevail on their argument that they have suffered actual damages with respect to their trade-in vehicle.  The evidence shows that Cherry tried to return the trade-in vehicle to Tricia on January 12, 2004, but she refused the tender.  The Bertins were able to gain possession of their trade-in vehicle one or two days later.  These facts support an inference that the delay in the return of the Bertins' trade-in vehicle was due to Tricia's refusal to accept the initial tender.  Moreover, the plain reading of § 2C shows that a car dealership's brief delay in returning a down payment is not contrary to the terms of the applicable provision.

Grant Automotive is therefore entitled to summary judgment on the ICFA claim (Count II).

C.      Count III:  Illinois Uniform Commercial Code

The Bertins claim that Grant Automotive violated § 9-611 of the IUCC by failing to notify them regarding the disposition of the Cavalier, after it was wrongfully repossessed by Grant Automotive and subsequently sold to a third party.  The Bertins claim that the Cavalier was a collateral for their loan within the meaning of § 9-611 of the IUCC.  The Bertins further claim that the sales transaction consummated on January 3, 2004, when they left the dealership with the Cavalier, with no conditions subsequent left to be satisfied.  The Court is not persuaded by this argument, and finds that § 9-611 is not applicable here.  Grant Automotive had a legal authority to repossess the Cavalier, once Tricia was unable to provide proof of her monthly income, pursuant to its ownership interest of the Cavalier, and not its security interest.

Section 9-611(b) states in relevant part: "Except as otherwise provided in subsection (d), a secured party that disposes of collateral under Section 9-610 shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition."  810 ILCS 5/9-611(b).

22

Subsection (c) provides: "To comply with subsection (b), the secured party shall send an authenticated notification of disposition to: (1) the debtor; [and] (2) any secondary obligor . . . ."  Contrary to the Bertins' assertion, § 9-611 is not applicable to the instant case.

"Issues of contract interpretation are usually questions of law for the Court.  That is why courts often say that '[t]he interpretation of a contract is an issue particularly well-suited for resolution by summary judgment." Hamilton v. O'Connor Chevrolet, Inc., 399 F. Supp. 2d 860, 864 n. 4 (N.D. Ill. 2005) (internal citations omitted).  The interpretation of the contract at issue here is a matter of law in Illinois.  GNB Battery Technologies, Inc. v. Gould, Inc., 65 F.3d 615, 621 (7th Cir. 1995).  When interpreting a contract, all documents that are entered into simultaneously should be construed together, and the Court must give meaning to all of the stated terms.  Id. at 622.  Absent an ambiguity, the Court must give effect to the plain meaning of all of the terms of the agreement.  Atlantic Mutual Insurance Co. v. Metron Engineering and Construction Co., 83 F.3d 897, 898 (7th Cir. 1996).  The undisputed evidence shows that on January 3, 2004, the Bertins signed the following documents in their effort to purchase the Cavalier: (1) the RIC, (2) the Bail and Hold Harmless Agreement, (3)

23

the Bill of Sale, and (4) the I Understand Form.   The parties dispute whether the terms set forth in the Bill of Sale were part of the parties' agreement.   The Bertins and Grant Automotive, however, appear to agree that the terms set forth in the Bail and Hold Harmless Agreement were part of the parties' agreement.

The Bail and Hold Harmless Agreement provided: "Delivery of vehicle described on attached retail buyers is accepted by purchaser subject to credit approval by a financing institution within 72 hours, and in the event of a credit report, terms or amount unacceptable to the financing institution, the purchaser shall return the said motor vehicle immediately to the dealer, or pay the full purchase price in cash."  Bail and Hold Harmless Agreement.  The Bertins contend that when they left the dealership with the Cavalier on January 3, 2004, the sales transaction was finalized because they had submitted all of the necessary paperwork required by Nuvell.   They further contend that, "[a]t most, Grant [Automotive] had 72 hours to identify financing difficulties in order to terminate the contract, as expressly stated in the Bail and Hold Harmless Agreement, but no mention of any financing difficulties was made until 5 days after the contract was written– at least two days later than the contract allowed."  Plaintiffs' Motion, at 15.

The Bertins have misread the terms set forth in the Bail and Hold Harmless Agreement.  In fact, the provision in question states simply that the Bertins could rightfully retain possession of the Cavalier only if Nuvell agreed to extend credit within 72 hours.  The Bail and Hold Harmless Agreement neither says that Grant Automotive had to notify the Bertins within 72 hours whether their loan application had been approved, nor that the failure to do so precluded Grant Automotive from terminating the contract.  Therefore, the Bertins' contention is unavailing.

The Bertins also signed on January 3, 2004, the I Understand Form, which included provisions such as: (1) "I UNDERSTAND . . . This transaction is subject to final approval by lender.  All information I have stated on the application is correct.  This includes residence, work history and income." and (2) "I UNDERSTAND . . . That I must keep my same employment and residence for the next 30 days in order to complete the financing agreement."  I Understand Form.  According to the terms set forth in this document, both Tricia and James were required to maintain employment for 30 days following the sales transaction in order to complete the financing agreement.  The undisputed evidence shows that Tricia did

not.  Thus, Grant Automotive had a legal right to take possession of the Cavalier pursuant to its ownership interest.

Without citation to any authority, the Bertins contend that the fact that no other documents signed by the Bertins included a similar provision requiring the buyer to maintain employment for 30 days following the sales transaction shows that the I Understand Form was not part of the parties' agreement.  The Court disagrees.  As noted earlier, in interpreting the contract at issue here, this Court must construe the terms set forth in all of the documents that were entered into simultaneously by the parties, and must give meaning to all of the stated terms.

The Bertins further contend that because they were never given a copy of the document, it does not add any terms to the parties' agreement. The Court is not convinced by this argument, and the Bertins have failed to cite any legal authority for their proposition.  Grant Automotive is therefore entitled to summary judgment on the IUCC claim (Count III).

D.    Count IV: Trespass to Chattel (Conversion)

"To prove conversion, a plaintiff must establish that: (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession;

and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." Johnson v. Grossinger Motorcorp., Inc., 324 Ill. App. 3d 354, 362, 753 N.E.2d 431, 438 (Ill. App. 1st Dist. 2001).  Here, the Bertins' conversion claim fails for the same reasons noted above.  The evidence shows that the Bertins did not have an absolute and unconditional right to the Cavalier because Tricia was unable to provide proof of her monthly income as required by Nuvell.  Grant Automotive is therefore entitled to summary judgment on the conversion claim (Count IV).

CONCLUSION

THEREFORE, for the reasons set forth above, the Plaintiffs' Motion for Summary Judgment (d/e 20) is DENIED, and the Defendant's Motion for Summary Judgment (d/e 14) is ALLOWED.  All pending motions are denied as moot.  The case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: April 27, 2007.

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE